UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBORAH BUZZANGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09-CV-1353 (CEJ) |
| ) | |
| LIFE INSURANCE COMPANY OF ) | |
| NORTH AMERICA, also known as ) | |
| CIGNA Group Insurance, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's motion to compel disclosure of documents that defendant withheld from the administrative record, citing the attorney-client privilege and the work-product doctrine. Defendant has filed a response in opposition to the motion and the issues are fully briefed.

Plaintiff Deborah Buzzanga brought this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(1), to recover accidental death benefits she asserts are due under a group accident policy issued by defendant Life Insurance Company of North America (LINA) to her employer, BJC Healthcare. Plaintiff's husband and covered dependent, Garry C. Robinett, died in a single-vehicle motor vehicle accident on December 22, 2007. LINA denied plaintiff's application for benefits, based upon a finding that Mr. Robinett's blood alcohol level was above the legal limit at the time of the accident. Plaintiff alleges that the denial constitutes a breach of fiduciary duty and an abuse of discretion, and that it was arbitrary and capricious. Defendant produced the administrative record, with the exception of four documents it claims are protected from disclosure by the attorney-

client privilege and the work-product doctrine.[1]  The documents consist of a request to in-house counsel for a legal opinion and three research memoranda "regarding applicable law governing DUI claims in an accidental death insurance context."[2] Plaintiff does not contest that the documents are privileged but asserts that they must be produced pursuant to the fiduciary exception to the attorney-client privilege. Defendant urges the Court to adopt the reasoning of Wachtel v. Health Net, Inc., 482 F.3d 225 (3d Cir. 2007), in which the court held that the fiduciary exception does not apply to an insurer acting as a claims administrator.

I. Background

Mr. Robinett died on December 22, 2007.  Plaintiff submitted a claim for benefits on January 18, 2008.  The claim was denied on June 30, 2008; plaintiff filed an appeal on June 5, 2009; and the denial was affirmed on August 19, 2009.  Three of the documents at issue were written before June 30, 2008; the fourth document was written on August 13, 2009.

II. Discussion

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1), Fed.R.Civ.P.  The attorney-client privilege affords a client the right to refuse to disclose "communications between attorney and client made for the purpose of obtaining legal advice." In re United States, 590 F.3d 1305, 1309 (Fed. Cir. 2009) (quoting Genentech, Inc. v. United States Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997)).  The privilege "encourag[es] full and frank communication between attorneys and their clients" and

---

[1] Defendant has provided the Court with copies of the documents for *in camera* review.

[2] One of the legal memoranda was prepared on September 14, 2007, to address similar issues arising in connection with a different claimant.

"recognizes that sound legal advice . . . depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The privilege "belongs to the client, who alone may waive it." In re United States, 590 F.3d at 1310 (quoting In re Seagate Tech., LLC, 497 F.3d 1360, 1372 (Fed.Cir. 2007) (*en banc*)).

The work product privilege is "distinct from and broader than the attorney-client privilege." In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007) (citation omitted). While the purpose of the attorney-client privilege "is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel," the work product privilege "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny." Id. (quoting In re Special September 1978 Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980)). "Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product," both the attorney and the client hold the privilege. Id. (quoting United States v. Under Seal (In re Grand Jury Proceedings # 5), 401 F.3d 247, 250 (4th Cir. 2005)).

While "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," it is not "an ironclad veil of secrecy." Id. (citations omitted). Several courts have recognized the existence of a "fiduciary exception" to the attorney-client privilege. See Geissal v. Moore Med. Corp., 192 F.R.D. 620, 624 (E.D. Mo. 2000) (fiduciary exception is "well established" and has been applied in cases involving review of the decisions of ERISA plan administrators). In the ERISA context, the fiduciary exception provides that communications between an attorney and a plan administrator or fiduciary are not protected from disclosure to the beneficiaries. Two rationales are offered to support the fiduciary exception: First,

"when an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." Halbach v. Great-West Life & Annuity Ins. Co., 2006 WL 3803696 *2, No. 4:05-CV-2399 ERW (E.D. Mo. Nov. 21, 2006) (quoting Wildbur v. Arco Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992)). The second rationale is that an ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding administration of the plan, including any communications with an attorney that are intended to assist in the administration. In re Long Island Lighting Co., 129 F.3d 268, 271-72 (2d Cir. 1997).

The fiduciary exception applies only to communications that involve plan administration. United States v. Mett, 178 F.3d 1058, 1064 (9th Cir. 1999). Thus, when a plan fiduciary retains counsel in order to defend himself against plan beneficiaries, the attorney-client privilege remains intact. Id. This is because the plan administrator is no longer acting on behalf of the disappointed beneficiary but, instead, is acting in his own interests or in the interests of the rest of the beneficiaries. Id. at 1063.

In order to determine whether a particular attorney-client communication involves a matter of plan administration or seeks legal advice for the fiduciary's own benefit, courts examine both the content and the context of the communication. Smith v. Jefferson Pilot Fin. Ins. Co., 245 F.R.D. 45, 48 (D. Mass. 2007). The inquiry centers on whether the purpose of the communication was legal advice regarding the liability of a plan administrator in imminent or pending litigation, as opposed to advice concerning a general fear of liability or advice concerning plan administration itself. Black v. Bowes, 2006 WL 3771097 *3 (S.D.N.Y. Dec. 21, 2006). "Frequently, the key question is whether the communication was made before or after the decision to deny

benefits." Smith, 245 F.R.D. at 48 (quoting Asuncion v. Metropolitan Life Ins. Co., 493 F.Supp.2d 716, 720-21 (S.D.N.Y. 2007)); see also Geissal, 192 F.R.D. at 625-26 (discussing pre- and post-decisional legal advice). Courts have rejected the argument that communications made before a claim is denied should be protected, noting that "whenever the administration of a plan involves the denial of a beneficiary's claim . . ., all of the antecedent, pre-decisional legal advice of counsel would be subject to the attorney-client privilege and not available for review by the beneficiaries of the plan, including the disappointed beneficiary. This contradicts the principle that the plan's administrator or trustee administers the plan in the beneficiaries' best interests." Id.

In this case, three of the disputed communications occurred before defendant denied plaintiff's claim and thus are subject to the fiduciary exception. Defendant urges the Court to adopt the reasoning of the Third Circuit in Wachtel v. Health Net, Inc., 482 F.3d 225 (3rd Cir. 2007), and find that the fiduciary exception does not apply to insurers. The Wachtel court determined that insurance beneficiaries were not an insurer's true clients. Id. at 234-36. This reasoning has not been adopted by other courts. The Wachtel court also held that ERISA's statutory disclosure requirements were not intended to apply to insurers, reasoning by analogy from ERISA provisions that exempt insurers from obligations to hold assets in trust. "[W]e do not believe that Congress intended to impose upon insurance companies doing business with ERISA-regulated plans the same disclosure obligations that have been imposed upon trustees at common law." 482 F.3d at 236 (citing 29 U.S.C. § 1103(b)(1)-(2)). At least one court has rejected this analysis. See Smith v. Jefferson Pilot Financial Ins. Co., 245 F.R.D. 45, 51 (D. Mass. 2007) ("[I]n light of the breadth of the disclosure obligations established by ERISA with respect to plan administration matters, . . .the attorney-client privilege should not be used to narrow the scope of those obligations.")

The Court declines to adopt Wachtel and finds that the fiduciary exception to the attorney-client privilege applies to the documents at issue.

Defendant cannot claim work product protection for the three documents generated before the claim was denied because the divergence of the beneficiary's interests from those of the plan administrator had not yet occurred. See Geissal, 192 F.R.D. at 625 ("While litigation can result from any fiduciary act, the administrator's acts of securing legal advice for the plan . . . prior to the plan's decision regarding benefits cannot be said to be in anticipation of litigation.") The fourth document was generated on August 13, 2009, in response to an appeal filed by plaintiff's counsel. By that time, "the prospect of litigation was sufficient to erect the attorney work product doctrine as a bar to the subject information." Id. at 626.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel [Doc. #16] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that, not later than **April 12, 2010**, defendant shall produce the documents dated April 4, 2008, June 19, 2008, and September 14, 2007. The defendant may redact the name of the insured from the September 14, 2007 document before production.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 5th day of April, 2010.